Clerk, will you call the next case, please? Chris Good afternoon May it please the Court My name is Dan Cordes and I am here on behalf of the appellant, Rachel Bremer I submit to the Court that we have a very simple case here We have a very simple case involving proper interpretation of a divorce settlement agreement As the Court can see in its briefs of the timeline and the history of this case I would just point out that the parties were divorced in October 2006 I want to point out that both parties were represented by experienced counsel in Peoria County This was a settlement agreement, fully negotiated, entered by the Court Of course, the provisions that we need to be most concerned with here today Are a maintenance provision, paragraph H, a maintenance provision, paragraph I And then most importantly, paragraph O in this so-called railroad annuity beneficiary designation The language we are dealing with in this case is one sentence long And it required Gary Bremer, who passed away after the divorce in March 2010 Gary Bremer shall designate the plaintiff, my client, Rachel Bremer, as an irrevocable beneficiary of his share of the annuity Until October 1, 2012 or until he no longer has an obligation to pay maintenance I emphasize the words until in that sentence It is a provision involving timing It sets a deadline, it sets a timeframe during which Mr. Bremer was required to maintain my client as the beneficiary on his railroad annuity And he passed away during the applicable timeline And the railroad is going to pay out my client the beneficiary proceeds But the Peoria County Circuit Court has ruled that that provision was intended to secure the payment of maintenance If my client has to forfeit any sums received in excess of what she might be owed for maintenance up through October 1, 2012 She must forfeit any excess to his estate And that is nowhere in this agreement That is nowhere in this agreement And we're going to hear today in your reading of briefs that there are references made in paragraph O to the maintenance provisions in paragraph H Well, paragraph O, and I say in my brief, it in a sense is a security for the payment of maintenance Because if Mr. Bremer became disabled during his lifetime or became unemployed, he could dip into his share of that annuity to make some maintenance payments So, in a sense, it was security for the payment of maintenance But that provision, paragraph O3, is so simple and it is so clear It set a deadline, a timeline, where my client was to remain the irrevocable beneficiary And he passed away while that was in effect And the case law, well first of all logic, in a plain unadorned reading of this settlement Makes clear that that should just simply apply The court is bound to apply the letter of the agreement Mr. Bremer was required to keep my client as the beneficiary until October 1st, 2012 Or if maintenance terminated prematurely, whether she remarried or lived with someone or something But if maintenance didn't terminate prematurely, he had to keep her as the beneficiary until October 1st, 2012 And it's just as simple as that So she doesn't get anything after October 1st, 2012? No, absolutely not The word security does not appear anywhere in this settlement agreement Nowhere in this settlement agreement does it say that my client should pay the excess of whatever she was owed in maintenance at the time of the client's death Assuming of course when the settlement was reached, nobody knew Mr. Bremer was going to pass away in the next few years But there's nothing about forfeiture in there So the court knows that the case law would say, you look at the four corners of the agreement And whatever the language says, if it's unambiguous, it's got to be applied, period And that favors my client heavily But kind of the next phase of the way I look at this beyond a literal reading of the agreement is We get to the case law And I cite the Konings case, I cite the Schwarz case, I think those are the two most applicable I think those are the two most appropriate I cite the Comiskey case, the Wassum case, the IDS life insurance case And I do want to point out, even though I pointed it out in my reply brief The estate just does not distinguish those in any meaningful fashion The estate cannot get around the holdings of those cases And I won't belabor the details of every one of those cases But I was getting to the point that the way I look at this, even if we want to say  These cases mostly deal with children The very common provision in a divorce decree or a divorce settlement that says Dad has Caterpillar life insurance and dad will keep the minor children insured as the beneficiary On his Caterpillar life insurance policy until the youngest reaches 18 And these cases stand for the proposition that the appellate court has said That even if that type of provision was to secure the payment of child support Those cases involve children who are like 15 and 16 years old And then the parent passes away and the life insurance proceeds kick in And then the family starts fighting over it Well, a child who is 15 or 16 years old, maybe if the parent had lived Maybe they just would have owed $5,000 more, $10,000 more in child support Before the child reached 18 The appellate court has said that does not matter It's real simple The beneficiary designation went into effect When the children were still in minority, they hadn't reached 18 And we're not going to do the math in terms of Well, the child had $150,000 life insurance payout But geez, that's not fair Because dad would have only paid another $10,000 in child support If he had survived It doesn't matter, it does not matter The cases are crystal clear on that point Another thing that those cases stand for is I call it, the courts call it When the parent dies, the right to the child support The right to the life insurance proceeds Becomes irrevocably vested The court cannot do anything after the fact Because child support cannot be modified retroactively So, even if the court wants to accept That this was security for the payment of maintenance My client's right to that maintenance And the right to be the beneficiary of those annuity proceeds Vested irrevocably upon Gary Bremmer's death When she was the named beneficiary And the trial court, it is my position Was without any authority to do anything otherwise And the trial court, again, ordered my client to forfeit Anything she receives from that annuity In excess of what she would have been owed in maintenance Through October of this year I also want to point out Am I correct that the agreement really references child support? Is this paragraph G? I'm sorry, Your Honor, what paragraph? Paragraph O-3 Paragraph O-3, no No, the paragraph O-3 says that Mr. Bremmer had to keep my client as an irrevocable beneficiary Until October 1st, 2012 Or until he no longer has an obligation to pay maintenance The second was paragraph D Oh, in D, yes, Your Honor, that's a typo And I believe Mr. Day will agree with me That that was intended to reference paragraph H Very significant typo Well There's a lot of differences, isn't there? Child support and maintenance Based on my reading of the Koning's case and the Schwab's case It seems that the principles would apply across the board But that's a fair point, I do agree It's a significant typo I want to point out that if the court is inclined to read The transcript of the trial court's comments I think the court will gain some insight Into what the trial court judge was thinking The trial court judge used an example In response to my arguments And he said, well, it would be difficult to argue For me It would be difficult for me to argue That if there was a life insurance policy Securing the payment of child support If that policy paid out $150,000 The trial court said it would be difficult for me to argue That if the child was only going to be entitled To $10,000 more in child support It would be hard for me to argue That that was a fair and equitable result And I think we gained some insight Into what the trial court's reasoning was And I bring that up because That is just absolutely, positively Contrary to appellate court precedent It's wrong I think we can all speculate Maybe the trial court judge Thought it would be unfair For my client to receive all the annuity proceeds Maybe my client would receive a windfall But that's a very slippery Well, first of all It was an agreed settlement Both parties represented by counsel So There is no windfall There is no unfairness It was a completely negotiated agreement And also, if we venture down that road It's a pretty slippery slope There's a reason that, of course, courts Are required to enforce Marital settlement agreements Contracts or anything To the letter, to the letter Unless they're ambiguous So I think The trial court was trying to fashion What the trial court thought Might be a fair result And that's just not its place It just needs to interpret The agreement as written I will point out, for example The Wassum case Was a case where The husband was required Under a provision that clearly Clearly Was dealing with child support And medical expenses of the child And the paragraph said Husband shall reimburse His ex-wife for 50% Of her health insurance premium costs Well, it seemed pretty clear That it was plausible to think That that was for the support of the child And the appellate court Said no, no It says He has to pay 50% of the health insurance Premium costs of his ex-wife And that's what it said And that is certainly More plausible than We may ever have here I just raise that because Again, the court has to Apply this Marital settlement agreement As written and that just simply Did not happen And I don't know where I am In my time But I, again, will use An example that If parent is required To keep a minor child Insured as beneficiary If father dies Two days before that child turns 18 The Konings case And the Schwast case And the appellate court precedents say The beneficiary designation Goes into effect The child is entitled to it There's no cap There's no limit On what that child will receive Just because dad died Two days before the child reached 18 And child support would have stopped And there was nothing In this judgment That limits the amount of money That my client should be paid out On that annuity Nothing And that was read into The agreement by the trial court So on remand My request would be That this matter be remanded To the trial court For an order Allowing my client to Retain the money paid out Pursuant to the beneficiary designation Which by ERISA and federal laws Is going to pay to her anyway Just so the court knows The trial court said Conceded that it could not Help a railroad Governed by ERISA To pay it to someone else But the trial court said But I can order your client Who is a party to this divorce action I can order them to do something else Thank you Thank you Mr. Cordes And Mr. Day May it please the court Good afternoon My name is Robert Day And I am the attorney For Laura Montbriand Who is the executor Of the estate of Gerard Gremmer Which is the appellee And cross appellant in this case Mr. Cordes ran through Some of the facts of the case I will also do the same At the beginning here First of all the parties Were divorced in Peoria County In October 2006 Paragraph 11 on page 2 Of the judgment of Dissolution of marriage Stated that the parties Had entered into a property Settlement agreement The terms of which are Contained in the judgment Of dissolution of marriage Paragraphs of the judgment Are paragraphs H, I And paragraphs 01-06 Of the judgment Paragraph H Stated that Rachel Gremmer Was entitled to receive $1,000 per month in maintenance For a period of 6 years Beginning in October 2006 And ending October 1, 2012 Paragraph I Stated that Gary Gremmer Shall pay Rachel Gremmer $150 a month Towards her medical insurance Premiums And that this shall be deemed Also to be maintenance And also should be paid For 6 years At the same time Ending October 1, 2012 Paragraph O Identified this pension annuity That is concerned about here Identified it as having a value Of about $100,000 Paragraph 01 Stated that the pension annuity Plus $27,000 Should go to Gary Gremmer The $27,000 coming off of The 50% that was to go to Rachel Gremmer Paragraph 02 Said that 50% of the pension annuity Less $27,000 Would go to Rachel Gremmer Paragraph 03 Of the judgment Stated that Gary Gremmer Shall designate Rachel As the irrevocable beneficiary Of his share of the pension annuity Until October 1, 2012 Or until he no longer Has an obligation to pay maintenance As set forth in Paragraph H Of the judgment It says Paragraph D But both parties agree Paragraph D Doesn't refer to maintenance Paragraph H does We've agreed that it's supposed to be Paragraph H Paragraph 05 of the judgment States that Gary Gremmer Shall not withdraw any portion That was given to him in Paragraph 01 Unless he becomes unemployed Or disabled And needs the money To pay Rachel Gremmer The $1,150 per month in maintenance Gary Gremmer died In March of 2010 He died with a will He named his sister As the executor Laura Maprian Was designated in March of 2010 As the executor In her capacity as executor Attempting to marshal The assets of the estate One of which was The pension annuity At the Burlington Northern Santa Fe Railroad Company At which point she was informed That Rachel Gremmer had made a claim With the railroad company For this same pension Since Paragraph 01 Had awarded 50% Plus $27,000 Of that pension to Gary Laura Maprian Went to circuit court In the original divorce case To enforce the judgment Which is done Pursuant to Section 511 Of the Illinois Marriage And Dissolution of Marriage Act In the petition To enforce the judgment She asked that the court Also find Not only that he was entitled To this money that had been Awarded to him in Paragraph 01 But also to find That he was terminated At his death Pursuant to Section 510C Of the Illinois Marriage And Dissolution of Marriage Act Which is what that section states Rachel Gremmer filed a response To the petition to enforce the judgment In her response she alleged In the alternative Number one that she was entitled To the entire amount of the pension annuity Because of the beneficiary designation Or in the alternative That she should be entitled to receive That she should receive Up to October 1st, 2012 On March 30th, 2011 A hearing was held On the petition to enforce the judgment On October, excuse me On March 30th the hearing was held On April 1st, 2011 The court entered its order in the case And found that the beneficiary designation That Gary had been ordered to sign In Paragraph 03 of the judgment Had been ordered solely to secure The maintenance obligation That had been set forth in Paragraphs H and I And found that Gary's obligation To pay maintenance Did not terminate at his death The court also ordered In that April 1st, 2011 order That Rachel was entitled To receive from the railroad company At that point A sum of $20,700 Which she could hold as security For the maintenance obligation As security For the payment of the maintenance obligation Which would continue After Gary's death To October 1st, 2012 That $20,700 The trial court judge calculated that By simply taking the $1,150 a month That had been ordered In Paragraphs H and I Of the judgment And multiplying that by 18 months Since it was 18 months Between April 1st, 2010 And October 1st, 2012 I have a question Regarding all of this It's very detailed You can tell that there was A lot of planning And a lot of negotiation That went into that And so my question to you Is if that was truly The intent of the parties Why isn't it spelled out In the agreement Well, I think it is spelled out In the agreement If you look at the whole agreement And if you look specifically At Paragraph 03, first of all You can tell the time period For the payment of maintenance ends Which was October 1st, 2012 And then you also look At Paragraph 05 Which specifically said That Gary could only Use his portion Of the pension annuity If he became unemployed Or disabled And then he could only Withdraw it to make His monthly mortgage payment Of $1,150 And so forth in Paragraphs H and I It was detailed But I think that they were I think it's pretty clear And I think the trial court Judge felt it was pretty clear That this was an attempt To make sure that the Maintenance that was being Ordered got paid to her Even if Gary was unemployed Or became disabled And there are all kinds Of cases where The obligation for maintenance Ends, the beneficiary Doesn't get changed The person dies You know, the designation Is beneficiary leaves That money to them And without it stating otherwise I don't see the basis For the court to determine That their intent Was, I mean Because clearly it could Have been spelled out in here That in the event he dies It's spelled out pretty clearly In every other paragraph Who gets what You know And because they have children It even seems more curious To me that that wasn't Spelled out I agree that there's those Cases that say that If a person lists his wife As a beneficiary of a Life insurance policy And then gets divorced And doesn't remove her From her life insurance This case really is about What is really about How a court Is supposed to go about Construing the provisions Of a marital settlement agreement Or a dissolution judgment To determine what the Intent of the parties were And that's what the court Was doing here The court, well to begin with Let me just state that The way so many of our Laws are written Is to give effect To the intention of the parties That the parties intent Must be determined from a Reading of the instrument as a Whole and not from any one Clause standing alone And then in doing so Courts should presume that the Parties included each provision Deliberately and for a purpose And that no language can be Rejected as surplusage And I think that if you look At the decision that the Supreme Court judge made After Rachel Burmer filed Her motion for reconsideration And the judge then Made that, ruled on that Motion for reconsideration And his order was dated June 20th, 2011 And simply Reaffirmed his April 1st Decision but explained it More fully If you read those I think the judge was right It was not intended by the Parties that Rachel Burmer Was entitled to get All of the 50% plus The $27,000 that had Just been given to Gary Burmer in the preceding Paragraph of 01 Paragraph 03 Isn't that your strongest Argument in the document Is that there was a Property division settlement Where he was allocated 50% of that annuity If to hold otherwise As opposing counsel That becomes a nullity In a settlement agreement Doesn't it? I'm sorry? That becomes a nullity If we accept the argument Of opposing counsel Then that division becomes A nullity, doesn't it? I don't think it does The provision becomes A nullity as to the Decedent, his estate I don't understand Over this question Am I correct that There was a property Division of that annuity Yes 50% plus $27,000 Was awarded to The decedent Yes That becomes a nullity If opposing counsel's View is accepted, doesn't it? Because the decedent Was awarded 1 half plus $27,000 Maybe I misunderstood I don't think it will I think the estate will get that Because that is simply What the company That's holding this annuity Will follow Whatever that Divorce decree However that divorce decree I understand that But we're trying to interpret The document as to what Happens with this annuity And you're saying That it's really an indemnity For the payment of maintenance Correct Up to a time certain When the obligation is erased Right, exactly So in the trial court That's what the trial court  The $20,700 In his order He was simply saying If the maintenance Co-happens with another person And the maintenance goes all the way To October 1, 2012 Then there will be $20,700 Of this share Of Gary's share of this annuity That can be used To pay your maintenance When that is done The court said Then you must turn over The remainder of that To Gary's estate In fact the court order said You have a right to keep The remainder of that To his estate At this point in time That's what the order said I'm going to turn then I had more on that point But I'm going to turn To our cross appeal Which We Have filed in this case The cross appeal I think Is well Supported By both Illinois Supreme Court decisions And appellate court decisions In this state That made it clear That Well first of all Section 510C of the Illinois Marriage And Dissolution of Marriage Act Clearly provides that if a party dies The obligation to pay maintenance Is terminated In this particular In the cases The appellate court cases That construed section 510 To say that That unless There is an agreement Between the parties In a marital settlement agreement Unless that agreement between the divorcing parties Clearly and unmistakably states That it is the intent Of those parties That maintenance shall continue After the death of the payor spouse Maintenance terminates upon the death of the payor It's our position in this case That the wording Of that judgment Does not rise to that standard The wording in paragraph H States that the parties are agreeing to Does not state That the parties are agreeing to waive The provisions of section 510C And And does not state That the maintenance Will terminate upon the death of either party In other words There is not a clear Unmistakable statement In paragraph H That it is clear That maintenance is to continue After Gary Bremmer's death Or is to constitute a claim That can be made against the estate And that this estate should be obligated To pay maintenance After Gary's death And I've cited these cases Which are Are right on point And I think that it's clear From the language that's in this judgment That the parties That the language did not Refer to Section 510C And that the court's order Of April 1st, 2011 Where he found that That the maintenance Without explanation As to why he ruled that way He found that the maintenance Should continue After Gary's death And I think that that is not supported By the case law that we've cited Any questions? Thank you I would like to Address the question Raised by Justice Holdridge Paragraph O Is a property division paragraph It is a separate paragraph From the maintenance paragraphs That appear earlier in the judgment I think that lends credence To our position But As to the question As to whether the paragraph O3 Subparagraph O3 Would render The earlier Property division Provision A nullity It doesn't because First of all it's a later paragraph I think it's just The earlier provisions are just subject To the later provision For example I wrote down three examples While I was sitting there listening You could have a divorce settlement Where husband gets to keep Not tonight But for the next Five, six years He has to keep his ex-spouse As the payable on death Beneficiary on that CD Well, he got that CD As part of the property settlement It is his property But it is subject to the requirement That the ex-spouse be The beneficiary of it Another example would be a house For example Let's say wife Owns her own property But maybe the parties Own that property And both of their names Are on the deed And both of their names Are on the promissory note And the mortgage with the bank So maybe the deal is Wife gets the marital residence But within the next year She has to refi it At the bank So as to get husband off the note And if she can't accomplish that The husband would receive A piece of property As part of a settlement But it would be subject to What's the value of a CD Payable on death for six years To somebody else It isn't worth $100,000 Well, no But for example In my example You could say Well, maybe the parties Had a 12-year-old And maybe the wife Had a 16 But if the husband survives Past six years Then it's his So I just To answer your question, your honor I think that those provisions In that divorce settlement Are perfectly consistent With one another He did get his share of the annuity But it was subject to the requirement To keep his ex-wife listed As the beneficiary Until October 1, 2012 And then his estate Gets the rest of the annuity, right? Well If it's not clear in the record The entire annuity His share of the annuity Would be paid to my client Under the arrangement So If his annuity Was worth $77,000 My client is the beneficiary Of that entire portion So she would receive it Correct And I think that the case law Is crystal clear That The Konings case And the Schwass case And the Blossom case And the IDS life insurance case Are all just perfectly clear That if that's the arrangement There's not going to be any Equitable evening up Whether it's in the child support context Or the maintenance context The agreement is just Applied as it's written It was securing the payment Of maintenance Why wasn't it in there That any excess Beyond the maintenance obligation Would be paid over to the estate It wasn't in there This is just such a Such a simple case Such a simple case Very simple language Fully negotiated with counsel On both sides Mr. Bremer was to Maintain my client It's as simple as that To address Mr. Day's arguments On his cross appeal You know It's interesting I wouldn't make that argument Because the estate is arguing That the maintenance obligation Terminated upon the death Of Mr. Bremer But if we accept that as true Then paragraph 03 Couldn't possibly be Securing the payment of maintenance Upon his death Until October 1, 2012 It's a circular argument It undermines The argument he has In response to our appeal It's a circular argument Could not Uphold The decision of the trial court Under that theory Certainly It just completely undermines The trial court's reasoning Thank you I just would comment We still hear no distinguishing Of the cases that I've cited None If there are no questions Thank you Mr. Cordes Thank you And Mr. Day Do you have any rebuttal As to your cross appeal Mr. Cordes had made The same argument in his brief That it's inconsistent To Take the position that the Beneficiary designation Is only That the only purpose of that Was to maintain Was to make sure that there was A security or a fund To see if the maintenance was paid But that's inconsistent With us arguing That the maintenance Terminated At his death I don't think that that is Inconsistent at all And on page one of our reply brief I refer to that argument The party simply agreed To include The beneficiary designation In there And that Had a purpose Even as it turns out In this particular case If Gary Bremer dies At a time when he still owes Maintenance As he did In this particular case The fact that she now has That beneficiary designation Gives her the right to Claim a certain portion Of his share of the pension annuity To make sure that there's a fund there To pay The maintenance that he owes Up to the time of his death Whether that's Maintenance that he owes At the time of his death Or whether it's maintenance That the beneficiary designation Served a purpose That the parties had a right To agree to I would point out That the plaintiff In this case Does not cite any authority Refuting or even questioning The fact that the law in Illinois Which has been established by decisions Of the Illinois Supreme Court And Illinois Appellate Courts Is that Illinois courts Should not impose A judgment of a marital Settlement agreement Incorporated into a judgment Unmistakably show That the husband and wife Intended that result Is the estate paying The $1,000 now $1,150 now I'm sorry Is the estate paying the $1,150 Is it continuing to pay The maintenance Because of the No we are not Stopped any further Proceeding in this case I suppose the right answer Would be To answer your question BNSF and the pension plan Is holding the money It hasn't been paid out It is holding that money Pursuant to an agreement By myself, Mr. Cordes, and the plaintiff The plaintiff's only response In her appellate's reply brief To the fact that this is the law Is to refer to the fact That the judgment Identifies certain events That will cause maintenance To terminate And then to invoke a rule Of construction That says to express one thing Implies the exclusion of the other This is their response To this argument That we've made in our cross appeal Rachel Bremer claims that this applies In the present case Even though she cites no authority Where that rule has been applied The fact that Rachel Bremer Needs to rely on a rule of construction As opposed to actual language In the judgment Shows that the party's agreement Does not satisfy the legal requirement That the agreement must Unmistakably show that the party's Intended that maintenance Would continue as an obligation Of Gary Bremer's estate If Gary Bremer died So I think they have not Addressed that And I think that the language Justifies the granting Of the cross appeal Thank you Thank you Mr. Day And thank you both for your arguments today We will take this matter under advisement And get back to you with a written decision Within a short day